Maurice K. SALES, Plaintiff,

v.

DEPARTMENT OF JUSTICE, et al., Defendants.

Civ. A. No. 81–1970.

United States District Court, District of Columbia.

Oct. 20, 1982.

Jerry R. Goldstein, Rockville, Md., for plaintiff.

Robert E. L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

In this case, which arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*[1] and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*,[2] plaintiff, a 55-year old black male,

---

1. 42 U.S.C. § 2000e–2(a)(1), (2):

It shall be unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. 29 U.S.C. § 623:

§ 623. Prohibition of age discrimination

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

alleges he is the victim of unlawful employment discrimination in promotion, because of his race and age. Defendants are the United States Department of Justice and William French Smith, the Attorney General of the United States. They are subject to the provisions of Title VII of the Civil Rights Act of 1964, as augmented by the Equal Employment Opportunity Act of 1972 and the Age Discrimination in Employment Act (ADEA). The case was tried to the Court, without a jury. For the reasons that follow, the Court determines that plaintiff has not met his burden of persuasion that defendants acted from a discriminatory motive in plaintiff's non-selection for the position he sought. nor otherwise proved employment discrimination, and that, therefore, judgment must be entered for defendants.

Plaintiff, a certified public accountant, has been employed since 1972 by the Office of Justice Assistance, Research and Statistics (formerly the Law Enforcement Assistance Administration, hereinafter referred to as LEAA), in the United States Department of Justice. His prior employment had been with the Agency for International Development as a budget and fiscal officer, and for the State of California as an auditor. In early 1978, plaintiff was Chief of the Systems Branch, Accounting Division, Office of the Comptroller, at the GS–13/4 salary level, a position in the GS–510 accounting series.

During the relevant period, the LEAA Accounting Division had a Director and Deputy Director who reported to the Comptroller, and four separate branches: Systems, Reports and Control, Fiscal Services, and Law Enforcement Education Program.

By virtue of a position description of September 1976 and until August 5, 1980, the Director position had been classified as a financial manager, GS–505–15. Five of the eight duties listed required extensive knowledge of accounting principles, practices and procedures. On August 5, 1980 a new position description was issued for this position, essentially adopting the duties outlined in the earlier position description.

The position classification was changed, however, to an accounting officer, GS–510–15.

Each of the three persons (two white males and one white female) who occupied the position of Director of the Accounting Division met the GS–510 accounting series requirements and the one vacancy announcement for the position during the period it was classified as a financial manager GS–505–15 expressly required applicants to meet the GS–510 accounting series requirements.

At all times relevant herein, the Deputy Director position has been classified as a financial manager, GS–505–14. Yet, all position descriptions in effect for this position since January 1974, and, more specifically, from June 1976 until August 16, 1978 (the period during which the vacancy announcement giving rise to this action was issued), have indirectly required knowledge of accounting practices and procedures.

The following duties illustrate the interweaving of necessary financial management skills with accounting skills required for the Deputy position:

1. Plans, organizes and administers accounting, fiscal and related financial management programs and policies * *.

* * * * * *

3. Formulates and implements fiscal and accounting policies and methods relative to accounting operations to assure accountability of all funds and property, as well as accurate and timely reporting of the status of funds.

* * * * * *

7. Directs the personnel management and coordinates the general administrative operations for the Division. (Pl.Ex. 36).

On January 6, 1978, a vacancy announcement was posted for the position of Deputy Director. The announcement reflected LEAA's interest in selecting a person with strong administrative and financial management skills. Sales applied for this position, was interviewed as one of five "best

qualified" candidates, but, ultimately, not selected. Instead, Sandy Smith, a white male under age 40, another of the "best qualified" candidates, was chosen.

Throughout his career at LEAA, Sales has received above average written performance evaluations from his supervisors. He has been consistently praised for his accounting skills, his judgment, and his cooperativeness and ability to work with others. Sales received a commendation from the Comptroller General in 1979, along with Margaret Castor (now Clark), then Director of the Accounting Division, for design and implementation of the new LEAA automated accounting system. Sales applied for the Deputy Director position in the belief that he was surely qualified for the position and the most likely to be selected.

Pointing to various circumstances surrounding Smith's selection, plaintiff has attempted to prove that he was more qualified than Smith, the selectee, and that, but for his race and age, would have been awarded the position. Furthermore, plaintiff alleges that had he been promoted to the Deputy Directorship, a GS–14 position, he would have been therefore eligible to compete for the subsequent vacancy of the Directorship, a GS–15 position. Plaintiff assumes that had he been Deputy Director, the Directorship would have come to him as a matter of course and calculates his damages accordingly. Plaintiff seeks $22,752.02 in back pay as the difference between his GS–13 salary and the GS–14 salary from February 1978 through December 1980 and the difference between the GS–13 salary and the GS–15 salary from December 1980 until the date of trial. He also seeks retroactive promotion to the GS–14 Deputy Director position.

To substantiate his discrimination claim plaintiff asserts that although the Deputy Director position requires knowledge of accounting principles, the vacancy announcement omitted the X–118 Handbook requirements for the GS–510 accounting series. He insists that this omission was deliberate, thereby permitting Smith to qualify for the position. According to plaintiff, Smith does not meet the requirements for a GS–510 accountant, which are: (1) a full four-year course of study at an accredited college or university which included or was supplemented by at least 24 semester hours in accounting, or (2) at least four years of experience in accounting or an equivalent combination of accounting experience, college-level education, and training that provided professional accounting knowledge equivalent in type, scope, and thoroughness to that acquired through successful completion of a four-year college curriculum in accounting. However, defendant maintains that the Deputy Director position has always been classified as a GS–505 financial manager position and never as a GS–510 accountant position. While a 510 accountant is eligible to compete for the Deputy Director position, 510 accounting skills are not essential to satisfactory performance. A 505 financial manager has more extensive duties than a 510 accountant, including budget formulation. Smith, the highest ranking candidate, was chosen for his management abilities and strong financial background in teaching and practical application. These skills, in addition to his creativity and initiative, defendant believed, would complement the Director's superior technical ability.[3]

The LEAA uses a merit promotion system, following the Federal Personnel Manual. Under this system selection or non-selection for promotion is not to be affected by race, color, religion, marital status, age, sex, national origin, membership in legitimate employee organizations, lawful political affiliation, or physical handicaps which do not prevent satisfactory job performance. Supervisors must not pre-select candidates for promotion. Initially, a representative of the LEAA Personnel Office ranks each candidate for a vacancy in four

---

3. Plaintiff questioned this rationale, since all agreed that Clark's management capabilities were not deficient. Yet, as defendant points out, neither were her technical skills. Thus, even if Sales' technical skills were superior to Smith's, this did not necessarily warrant his selection as Deputy Director.

categories: experience, performance, education and training, and awards, and assigns a total point value. No extra credit is given for a CPA license, but that is considered equivalent to three years of general experience. Next, each candidate's application and ranking is reviewed by a Personnel Action Review Board (PARB) which determines the "best qualified" candidates. Best qualified candidates need not necessarily be those who receive the highest point values; PARB members may select best qualified candidates based on a variety of subjective factors, as well. The best qualified list is then presented to the recommending official, who is the manager at the level immediately preceding the selecting official. The recommending official, in this case Robert Goffus, conducts a preliminary screening of the candidates on the list, including interviews, and makes a recommendation for the position to the selecting official, here Mr. Gregg, the Acting Administrator.

Plaintiff was interviewed for the Deputy Director position and, according to his own testimony, believed that his interview had been fair, without any hint that the position had been pre-selected. In fact, in his pre-trial deposition Sales stated that he did not know the reason he was not selected.

Plaintiff filed a discrimination complaint with the Department of Justice, May 10, 1978. An EEO Officer of the Department found discrimination in his report of July 26, 1979, but on May 29, 1980, the Justice Department Adjudication Officer concluded that no discrimination had occurred. Plaintiff appealed this decision to the Equal Employment Opportunity Commission, which, on July 16, 1981, affirmed the decision of the Justice Department. Plaintiff filed this action August 21, 1981. Plaintiff now holds the position of Acting Deputy Director of the Accounting Division and has held that position at the GS–13 salary level since June 16, 1980. The position remains vacant officially.

Plaintiff has focused on what he believes is a discrepancy in the vacancy announcements for the positions of Director and Deputy Director in the Accounting Division. Oftentimes the Deputy Director must serve as Director in the Director's absence. Accordingly, plaintiff contends that both should possess the same or at least similar knowledge and skill. However, only the announcement for the Director's position provided that candidates must meet GS–510 accounting requirements. The announcement for the Deputy's position contained no such provision. While plaintiff asserts this omission was intended to permit Smith's qualification, and as a result, the denial of plaintiff's promotion, the testimony and documents show that both positions are classified as GS–505 financial managers.

Antonia Murphy, personnel staffing specialist at LEAA from 1973 to 1978, testified that she prepared the vacancy announcement in question, consulting the position description and the X–118 Handbook. No 510 accounting requirement for the Deputy Director position appears in either source. Yet, if a selecting official felt that 510 accounting skills were needed for the job the vacancy announcement could be altered to reflect that fact. While Smith may not have met the GS–510 accounting requirements, Clark, the former Director of the Accounting Division, testified that Smith's background in accounting was sufficient in all respects expertly to perform the Deputy Director's duties.

In further support of the discrimination claim plaintiff testified that Smith was a member of a white clique in the Office of the Comptroller. Several of the individuals in this office had a common background at the U.S. Department of Agriculture and often lunched together. Nonetheless, plaintiff revealed that he did not know whether any of these people worked together at the Department of Agriculture, knew each other then, or even whether they were employed at that agency during the same period of time. Neither did he know whether they were ever joined at lunch at LEAA by anyone else, nor whether anyone else had ever been invited to join them.

Plaintiff attempted to illustrate a pattern of discrimination by the alleged discrimina-

**1182**

ting officials through the testimony of five witnesses, current and former employees at LEAA. A summary of this testimony is illuminating.

Ira Mallett, a black male over age 40, formerly in the Accounting Division, had filed two complaints of discrimination in promotion on the basis of race and age prior to Sales' complaint. In one instance Smith was the candidate selected for the position available; in this sole circumstance, the EEO Officer concluded that Mallett had been discriminated against and recommended his promotion. In the second, a white male was selected. Nevertheless, despite his belief that this individual had been pre-selected, Mallett did not pursue his claim beyond the initial stages once the Justice Department's EEO Officer concluded there was no discrimination. Furthermore, the individual that Mallett believed to have been pre-selected did not ultimately get the job.

Howard Hyatt worked at LEAA from 1969 through 1980 as a 510 auditor but not in the Office of the Comptroller. He had been a member of the all-white PARB which placed Sales and Smith on the best qualified list for the position of Deputy Director. Since he was unaware that it had been classified as a 505 financial manager, he was surprised to learn that the Deputy Director position did not call for 510 accounting requirements. From Hyatt's account of the functioning of the PARB, Sales' qualifications for the Deputy position had been evaluated fairly. Sales was one of two 510 accountants of the five persons on the best qualified list submitted to Goffus. Goffus testified that he rejected the other 510 accountant with whom Sales competed, because his background was in systems accounting. Smith became the preferred candidate because he related well to people and possessed superior management capabilities and potential. Therefore, even if the selective criteria were too general as plaintiff alleges, they did not exclude plaintiff from consideration. In fact, had the criteria been more narrowly devised, perhaps so as to exclude Smith, Sales would still have had to compete for the position.

Plaintiff does not maintain that the criteria should have been drawn so narrowly so as to permit only him to be chosen.

Before Sales became Chief of the Systems Branch that position was held by a black male, Thomas Robinson, at the GS–14 salary level. Sales later served in that same position as a GS–13. While Robinson testified on plaintiff's behalf that he did not understand that he had served in that position as "incumbent only," the evidence demonstrated that Robinson occupied that higher salary grade since his duties at the time required the conception, development and implementation of a new automated accounting system. When Sales replaced him, Sales remained a GS–13 since the system was then fully operational.

■ Beatrice Graham, a black woman, and fellow employee at LEAA, testified that even though she had not read the job description for the Deputy position and did not know that the position was classified as a GS–505, she nonetheless believed that Smith was favored in the Accounting Division. Yet, even assuming plaintiff's supervisors did have favorites, that fact alone does not translate into discrimination against the plaintiff on the basis of his race or age.

Plaintiff's final witness, a Hispanic employment coordinator at LEAA, proved no more helpful to his cause than the others. He testified that Smith lacked the requisite experience to qualify for the Deputy Director position. However, cross-examination revealed that this witness knew nothing about Smith's qualifications or his background. Moreover, he was not in a position to evaluate Smith's performance since the two worked in different buildings and never came into contact with one another.

In sum, at the close of his case plaintiff had established only that, as in the past and at all times relevant, the vacancy announcement for the Deputy Director position did not include the 510 accounting requirements, which Sales believed it should have, that Smith, the selectee for this 505 position, did not strictly meet 510 accounting

requirements, and that Sales was a disappointed applicant for a position for which he was among the five best qualified. While one can readily sympathize with the failure of one highly qualified person to achieve a desired position secured by another highly qualified person, and while another individual might, on reflection, have come to a different management conclusion,[4] the issue here is whether plaintiff was discriminated against, and, if so, was it because of his race or age. No discrimination has been demonstrated here.

A plaintiff in a Title VII case alleging discriminatory treatment must prove by the preponderance of the evidence a *prima facie* case of discrimination. He must demonstrate that, as a member of the protected class, he sought an available position for which he was qualified but was rejected under circumstances which give rise to the inference of unlawful discrimination. This burden is not onerous. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Thereafter, the burden shifts to the defendant "to articulate some legitimate non-discriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Should the defendant carry this burden, the plaintiff is then afforded the opportunity to prove by a preponderance of the evidence that the reasons asserted by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. *See also McKenzie v. Sawyer,* 684 F.2d 62, 71 (D.C.Cir.1982). The ultimate burden of persuasion remains on the plaintiff throughout. *See Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095; *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1979) (defendant need merely articulate, not prove, absence of discriminatory motive).

The Supreme Court defined the elements of a *prima facie* case of racial discrimination in *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824:

The plaintiff must show (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

This formula does not require direct proof of discrimination, but plaintiff must demonstrate at least that he was not rejected for either of two common legitimate reasons: "absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977). Such a demonstration creates an inference that the employer's decision derived from racial animus. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978); *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981).

*McDonnell Douglas* involved an employer's refusal to hire a member of a protected group and a continued search for

---

4. Since 1972, LEAA had defined discrimination as:

Any action based on race, color, sex, religion, age, or national origin, rather than merit or fitness, including actions affecting rights, privileges, benefits, dignity, working conditions, and equality of economic opportunity. *Discriminatory* acts include not only clear, deliberate actions and/or comments that can be documented to show intent to injure or hamper an employee or applicant because of race, color, sex, age, religion, or national origin, but also *those actions, poli-*

*cies or practices, which, after appropriate investigation, are determined to have hampered or injured an individual or group because of race, color, religion, sex, age or national origin.* (Pl.Ex. 3 at 1, emphasis added).

The LEAA Equal Employment Opportunity Plan for Fiscal Year 1979, dated January 19, 1979, includes among its stated affirmative action objectives for the Office of the Comptroller, "to increase the number of Blacks and/or Hispanics in decision and/or policy-making positions by 12–1–78 * * *." (Pl. Ex. 4).

other qualified applicants. For cases involving alleged discrimination in the promotion of one person from among a group of qualified applicants, the *McDonnell Douglas* test for a *prima facie* case must be modified slightly. Indeed, the *McDonnell Douglas* court recognized that facts in Title VII cases vary and that the proof necessary in one case is not necessarily applicable to another. *McDonnell Douglas, supra,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. This jurisdiction has developed a formula in the context of gender discrimination, substantially derived from *McDonnell Douglas,* for cases of discriminatory refusal to promote:

> To make out a *prima facie* case the plaintiff must show that she belongs to a protected group, that she was qualified for and applied for a promotion, that she was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied.

*Bundy, supra,* at 957. *See also Garner v. Boorstin,* 690 F.2d 1034, 1036–1037 (D.C.Cir. 1982) *(per curiam); Freeman v. Lewis,* 675 F.2d 398, 400, 402 (D.C.Cir.1982) (referring to test as *McDonnell/Bundy* test); *Valentino v. United States Postal Service,* 674 F.2d 56, 63 (D.C.Cir.1982); *Parker v. Baltimore & Ohio RR,* 652 F.2d 1012, 1017 (D.C.Cir. 1981).

■■■ At this point it may be noted that in this jurisdiction, the test for a *prima facie* case of age discrimination under the Age Discrimination Employment Act is identical to the *McDonnell Douglas* test for race under Title VII. *Johnson v. Lehman,* 679 F.2d 918, 922 (D.C.Cir.1982); *Kerwood v. Mortgage Bankers Ass'n,* 494 F.Supp. 1298, 1308–09 (D.D.C.1980); *see also Loeb v. Textron,* 600 F.2d 1003, 1010 (1st Cir. 1979). To carry his ultimate burden of persuasion,

however, plaintiff must prove that the employer had a discriminatory motive and that plaintiff's age was a determinative factor in his non-selection. *Loeb, supra,* at 1019. Plaintiff has presented no evidence on the issue of age discrimination save the fact that Smith was under age 40 and he was over age 40. Although a literal application of the *McDonnell/Bundy* factors militates the conclusion that plaintiff has passed the first hurdle of proof,[5] nonetheless plaintiff has not sustained his ultimate burden. *Id.* The ADEA does not insulate employees over age 40 from competition with qualified younger employees.

While the Court might easily conclude that plaintiff has not proved circumstances giving rise to reasonable inference of race discrimination in his case in chief, again, a literal application of the *McDonnell/Bundy* criteria would shift the burden of going forward with the evidence to defendant.[6] Nevertheless, the defendant has clearly articulated a legitimate non-discriminatory reason for its selection of Smith over Sales. In accordance with *Bundy,* plaintiff was afforded an opportunity to refute defendant's explanation at trial but failed to persuade the Court, by a preponderance of the evidence, that defendant acted from an unlawful motive.

■■■ An employer has discretion to select one individual from a group of qualified candidates for a vacancy. Title VII does not require an employer to prefer a qualified minority candidate over a qualified non-minority candidate in selection for competitive promotion. *Burdine, supra,* 450 U.S. at 259, 101 S.Ct. at 1096. *See also Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

In this case, defendant has proffered a credible justification for its promotion decision, sufficient to at least raise a "genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine, supra,* 450

---

**5.** Plaintiff, over age 40, qualified for promotion, was considered but denied the position sought, and an individual under age 40 (not a member of the protected group) was promoted.

**6.** Plaintiff, a member of a protected group (blacks), qualified for promotion, was considered but denied the position sought, and an individual not a member of the protected group was promoted.

U.S. at 254, 101 S.Ct. at 1094. Smith received the highest point value of all applicants and was on the best qualified list. His financial management skills were important for the job and reasonably deemed superior to plaintiff's. The plaintiff had his opportunity to demonstrate that the proffered reasons for his non-selection were pretextual but failed to carry his burden of persuasion that he has been the victim of discrimination on the basis of either race or age.

Judgment shall be entered for the defendant.